[No. 43106.　En Banc.　July 25, 1974.]

DANIEL R. FINCH, *Petitioner*, v. DOUGLAS W. CARLTON *et al.,*
*Respondents.*

*Madison R. Jones,* for petitioner.

*Herbert H. Freise* and *Gregory L. Lutcher,* for respondents.

FINLEY, J.—Petitioner Finch seeks review of a summary judgment rendered by the Columbia County Superior Court. The grant of summary judgment was affirmed by the Court of Appeals, Division Three, *Finch v. Carlton,* 10 Wn. App. 32, 516 P.2d 212 (1973). We granted review to

consider the question of whether an insurance release may be avoided because of subsequently discovered injuries.

According to the agreed-upon statement of facts, on March 7, 1970, plaintiff-petitioner Finch was involved in an automobile accident in which his vehicle collided with that of respondent-defendant Carlton. On approximately March 10, 1970, Finch visited with Mr. Tone who was an insurance adjuster for the respondent's insurance company. A claim form was filled out cooperatively between Finch and Tone. The petitioner claimed no personal injuries at that time. About the same time, Finch took his automobile, which had been damaged in the collision, to Logan Chevrolet Co. for repairs. The amount of the bill incurred by the petitioner at Logan Chevrolet was $880.21. This sum was paid by respondent's insurance company on a company draft made payable to Logan Chevrolet and Finch jointly. No money or other consideration was given to petitioner. Petitioner signed a general release[1] prepared by Tone. Finch was informed that he must sign the release before the $880.21 would be paid. At the time of the signing of the release and for several months thereafter, petitioner alleges that he was not aware that he had any personal injuries and did

---

[1]

"RELEASE OF ALL CLAIMS

"FOR AND IN CONSIDERATION of the delivery of a draft or check to the undersigned in the sum of Eight hundred Eighty and 21/100 ($880.21), receipt of which is hereby acknowledged, each of the undersigned does hereby release and forever discharge Douglas W. Carlton Jr. et al of and from all claims, demands, damages, actions or causes of action, whether on account of damage to property, bodily injuries or death, resulting or to result from an accident which occurred on or about the 7 day of March, 1970, at or near Front & Main Streets, Dayton, Washington.

"It is understood and agreed that this is a FULL AND FINAL RELEASE in full compromise settlement of all claims of every nature and kind whatsoever, and releases all claims whether known or unknown; suspected or unsuspected.

"Each of the undersigned states that this release has been carefully read by and is signed as the free act and deed of such undersigned.

"DATED this 7 day of April, 1970.

"READ BEFORE SIGNING BELOW

x      Dan Finch"

not consult a physician until he became ill in June 1970. At that time, Finch consulted a number of physicians who treated him for internal injuries. Finch was then hospitalized for an extended period and incurred considerable medical expenses. Petitioner alleges these injuries were caused by the accident of March 7, 1970.

Finch filed suit in the Columbia County Superior Court claiming serious personal injuries and praying for damages of $100,000. The complaint alleged that Carlton had operated his vehicle in a wantonly negligent fashion and had caused his automobile to collide with that of Finch. Carlton responded with a general denial interposing the release executed by Finch and Tone as an affirmative defense. Thereupon, the trial court granted respondent's motion for summary judgment which was affirmed by the Court of Appeals.

This case squarely presents the court with the opportunity to choose between two conflicting lines of authority. Traditionally, absent fraud, duress, false representation or overreaching, this court has rigidly applied contract law, except in cases where mutual mistake is found. In *Pepper v. Evanson*, 70 Wn.2d 309, 313, 422 P.2d 817 (1967), we stated the general rules for avoiding releases due to mutual mistake as:

> 1. When a release is in plain and unambiguous language, as is the release in this case, we have said that: (a) Before a plain, unambiguous instrument can be set aside on the ground of mutual mistake, the evidence must be clear and convincing. *Spratt v. Northern Pac. Ry.*, 90 Wash. 592, 156 Pac. 563 (1916). (b) The courts will not interpret the meaning of unambiguous contracts. *Silen v. Silen*, 44 Wn.2d 884, 271 P.2d 674 (1954). (c) Where a release contains plain and unambiguous language, parol evidence will not be admitted to vary the release, *Betcher v. Kunz*, 112 Wash. 563, 192 Pac. 955 (1920); *unless* the release was induced by fraud, false representations or overreaching. *Reynolds v. Day*, 93 Wash. 395, 161 Pac. 62 (1916).
>
> 2. A court of equity will limit a general release to matters contemplated by the parties at the time of its

execution, *Bakamus v. Albert,* 1 Wn.2d 241, 95 P.2d 767 (1939); *but* that rule is not controlling when the release refers specifically to the matter being considered by the court, *Schwieger v. Harry W. Robbins & Co.,* 48 Wn.2d 22, 25, 290 P.2d 984 (1955). In this latter case we quoted the following language:

"[I]f the words of a release fairly import a general discharge, their effect may not be limited so as to exclude a demand simply upon proof that at the time of its execution the releasor had no knowledge of the existence of the demand."

3. A mutual mistake must be one involving both parties, a mistake *independently* made by each party. If the defendant had no independent knowledge and accepted plaintiff's own diagnosis and opinion, the mistake is unilateral. *Beaver v. Estate of Harris,* 67 Wn.2d 621, 409 P.2d 143 (1965).

4. The law favors the amicable settlement of claims when the settlement is secured without fraud, misrepresentation or overreaching. *Beaver, supra.*

The instant case does not involve a mutual mistake, as we have defined that term, nor is there an informed, negotiated assumption of *known* injuries subsequently compounded by later-discovery of more serious injuries as in *Pepper v. Evanson, supra.* Unlike prior cases, this action presents a situation where the parties presumably did not contemplate the possibility of latent injuries.

As previously noted, there are essentially two lines of authority which have developed around similar cases in other jurisdictions. The line followed in a small minority of jurisdictions is typified by the Oregon case of *Wheeler v. White Rock Bottling Co.,* 229 Ore. 360, 366 P.2d 527 (1961). In *Wheeler,* the court adhered to traditional conceptions regarding contract law, and held a release binding upon a pregnant woman with subsequently discovered back injuries. While this case is not directly in point as the plaintiff in that case was aware of some back pain which her physician may have thought pregnancy originated, it does illuminate the inflexible and dogmatic approach of some courts. In their considerations of the validity of general liability

waivers, these jurisdictions appear not to differentiate between standards applicable to commercial transactions and those peculiar to personal injuries. *See generally* Annot., § 15, 71 A.L.R.2d 82, 167-69 (1960).

■ The better reasoned rule adopted by an overwhelming majority of jurisdictions permits the avoidance of a release in circumstances where later-discovered injuries were clearly not contemplated by the parties at the time of release. A reasonably succinct statement of this line of authority is set forth by the California Supreme Court in *Casey v. Proctor*, 59 Cal. 2d 97, 112-13, 378 P.2d 579, 28 Cal. Rptr. 307 (1963):

> Under the majority rule, however, a release may not *ipso facto* be avoided upon the ground of later discovered injuries. The essence of the rule is that the wording of the release is not conclusive; it is a question of fact whether the parties to a release actually intended to discharge such liability. As was stated in *Denton v. Utley*, [350 Mich. 332, 344, 86 N.W.2d 537 (1957)] "We would not be understood as holding . . . that it is not within one's competence to say 'I may have serious injuries I know nothing about. As to them I will take my chances.' This, one may do. He may, if he wishes, release his rights and assume the risk of future disablement for $1 'and other good and valuable consideration,' or $50, or, indeed, an old beaver hat. In other words, it is possible that a reasonable, intelligent person, in full possession of all his faculties, and with knowledge that he may have serious injuries, will release a tortfeasor from all liability in return for a trifling sum of money. If such has in truth been the intention and the agreement we will not disturb the parties." . . . Whether a release bars an action for later discovered personal injuries is a question of fact and depends upon whether it was "knowingly" made. . . . Whether there is substantial evidence that it was not will depend upon the amount of consideration received compared with the risk of the existence of unknown injuries . . . [;] the presence of bargaining and negotiation leading to the settlement . . . [;] the closeness of the issue of liability . . . [;] whether the subject of personal injuries was discussed . . . [;] and the reasonableness of the contention that the injuries

were in fact unknown at the time the release was executed.

(Citations omitted.)

█ There are, of course, countervailing policy considerations which must be weighed or evaluated. On the one hand, the law favors the private settlement of disputes. Releases, therefore, are given great weight to promote the finality of out-of-court settlements. On the other hand, the law strongly favors the just compensation of accident victims. Thus, a majority of jurisdictions permit avoidance of a waiver which is not executed fairly and knowingly by the waiving party. *See Ranta v. Rake,* 91 Idaho 376, 421 P.2d 747 (1967); *Denton v. Utley, supra; Mangini v. McClurg,* 24 N.Y.2d 556, 249 N.E.2d 386 (1969); Annot., 71 A.L.R. 82 (1960).

Turning to the instant case, we have a petitioner who was involved in an accident with no immediately apparent injury. After the mishap, it was agreed that the respondent's insuror would pay the full amount of the petitioner's vehicle repairs. Petitioner Finch was informed that he must sign a release before receiving payment for the car repairs. Unaware of his internal injuries, petitioner signed a general waiver of liability in order to receive the money necessary to pay for the vehicle repairs. Some time later, the latent injuries manifested themselves, and petitioner was hospitalized, incurring considerable medical expenses. Thereafter, Finch filed suit to recover damages for his personal injuries, and was met by the affirmative defense of release.

It seems anomalous that in the absence of a release, there is no question but that the respondent would be potentially liable to the petitioner. However, the broad language of a general release is asserted to preclude liability by the tortfeasor even though the parties signing the release had contemplated only property damage and *not* personal injuries.

In our opinion, the majority rule is the more equitable and reasoned doctrine. The rationale employed by a major-

ity of jurisdictions does not permit the avoidance of a release merely because of the discovery of a previously unknown injury, but instead allows an inquiry into whether the release was fairly and knowingly made. As criteria for evaluation of releases, we adopt the factors suggested by Judge McInturff of the Court of Appeals:

> (1) the peculiar dignity and protection to which the law cloaks the human person, as contrasted with articles of commerce; (2) the inequality of the bargaining positions and relative intelligence of the contracting parties; (3) the amount of consideration received; (4) the likelihood of inadequate knowledge concerning future consequences of present injury to the human body and brain; and (5) the haste, or lack thereof, with which release was obtained.

*Finch v. Carlton*, 10 Wn. App. 32, 39, 516 P.2d 212 (1973) (dissenting opinion).

In light of the views expressed herein, a material question of fact exists as to whether the release was fairly and knowingly made. We are convinced, therefore, that this cause should be remanded for trial. It is so ordered.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.