[No. 13992-8-II.   Division Two.   October 23, 1992.]

SHARON NEVUE, *Appellant,* v. ADOLPH CLOSE, ET AL, *Respondents.*

*Hugh M. Robinson,* for appellant.

*Curtis. G. Johnson* and *Johnson & Williams,* for respondents.

PETRICH, C.J. — Sharon Nevue appeals from a summary judgment dismissing her complaint for personal injuries allegedly suffered in an automobile collision, based on a release she signed 2 months after the accident. Nevue contends that there is a genuine issue of material fact as to whether her release was "fairly and knowingly made". We agree and reverse the order granting summary judgment.

On April 26, 1985, Nevue and her husband were riding in a car driven by her mother-in-law, Sheila Moss. Nevue, who was 4 months pregnant, was riding in the back of the automobile. A vehicle driven by Adolph Close struck from the rear the vehicle in which Nevue was riding, causing her to be thrown into the back of the front seat. After the police investigated the accident, Moss drove the car to Olympic Memorial Hospital in Port Angeles where Nevue presented herself to the emergency room. According to Nevue, the only reason she went to the hospital was because she was concerned how the accident may have affected her pregnancy. She complained to the emergency room nurse of neck pain and upper abdominal discomfort. A doctor at the hospital diagnosed her as having a neck sprain after x rays revealed a "[m]ild reversal of curvature which may be due to muscle spasm", but her spine was otherwise normal. Due to Nevue's pregnancy, only limited x rays were taken. Nevue stated that she felt no back pain at the time of the accident. In her deposition, taken 4 years after the accident, she stated that she only remembered having stomach pain after the accident, not neck or back pain.

Nevue said that she did not believe she had been injured when she left the hospital. During the rest of her pregnancy she suffered back pain, which she attributed to that condition. On June 13, 1985, an insurance adjuster representing Adolph Close's insurer contacted Sheila Moss with a request to contact Nevue. Nevue and her husband then contacted

the adjuster. In exchange for $296.16, Nevue and her husband signed a release, releasing Close from all claims.

After giving birth in September 1985, Nevue's back pain did not subside and she began to undergo treatment. It was not until that time that she learned she had been injured in the accident. Nevue brought this personal injury action in the spring of 1988, alleging that the accident had permanently disabled her. Close moved for summary judgment on the basis of the release Nevue had signed. The trial court granted the motion, and Nevue appeals.

Nevue contends that she did not know her back was injured at the time she signed the release, making the release voidable.

■ This court reviews a summary judgment de novo:

> [W]e must engage in the same inquiry as the trial court. A summary judgment motion under CR 56(c) can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.

(Citations omitted.) *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *see also Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

■ The sole issue posed by this appeal is whether the release signed by Nevue barred her from bringing this personal injury action, when she was not aware at the time she signed it that she had suffered back injuries in the accident. Before 1974, a release was binding on the releasor unless it was induced by fraud, misrepresentation or overreaching or if there was clear and convincing evidence of mutual mistake in its execution. *Beaver v. Estate of Harris*, 67 Wn.2d 621, 626, 409 P.2d 143 (1965). However, in *Finch v. Carlton*, 84 Wn.2d 140, 524 P.2d 898 (1974), the Washington Supreme Court adopted a more flexible rule. The *Finch* court held that a release could be avoided "in circumstances where later-discovered injuries were clearly not contemplated by

the parties at the time of release." *Finch*, 84 Wn. 2d at 144. In *Finch*, the injured party signed a release of all claims against the insurance company in exchange for the cost of repairing his automobile. He was not aware that he had any injuries at the time he signed the release. The court held that where the parties did not contemplate the possibility of latent injuries, the release could be avoided if a previously unknown injury became known and if the release was not "fairly and knowingly made." *Finch*, 84 Wn.2d at 146. In determining whether a release was "fairly and knowingly made", the *Finch* court adopted the following factors:

> (1) the peculiar dignity and protection to which the law cloaks the human person, as contrasted with articles of commerce; (2) the inequality of the bargaining positions and relative intelligence of the contracting parties; (3) the amount of consideration received; (4) the likelihood of inadequate knowledge concerning future consequences of present injury to the human body and brain; and (5) the haste, or lack thereof, with which release was obtained.

*Finch*, 84 Wn.2d at 146 (quoting *Finch v. Carlton*, 10 Wn. App. 32, 39, 516 P.2d 212 (1973)).

The holding articulated in *Finch* was later limited in *Bennett v. Shinoda Floral, Inc.*, 108 Wn.2d 386, 739 P.2d 648 (1987). In *Bennett*, the Washington Supreme Court considered two different cases in which injured parties signed releases when they knew they were injured, but did not appreciate the full extent of their injuries. *Bennett*, 108 Wn.2d at 389-91. The *Bennett* court initially reiterated the competing policy considerations set out in *Finch*:

> On one hand, the law favors the just compensation of accident victims. On the other hand, the law favors the private settlement of disputes and gives releases great weight in order to support the finality of such settlements.

(Citations omitted.) *Bennett*, 108 Wn.2d at 394. The court then resolved those competing considerations as follows:

> In summary, we conclude that the balance between the policies favoring private, final settlement and the just compensation of accident victims can be properly maintained only if the *Finch* test is limited to its facts. We hold, therefore, that the *Finch* test applies only to situations where there is no

known injury at the time the release is executed. Because both Bennett and Hoggatt knew they were injured when they executed releases, *Finch* does not apply to their cases.

*Bennett*, 108 Wn.2d at 396.

Nevue's case falls between the rules announced in *Finch* and *Bennett*. In contrast to the situation in *Finch*, Nevue knew that she had suffered some injuries in the accident, complaining of neck and abdominal pain at the hospital. In contrast to the situation in *Bennett*, Nevue did not know of any injury to her back that resulted from the accident, believing that any back pain she suffered was caused by her pregnancy. Based on the reasoning in *Bennett*, Close contends that *Finch* is inapplicable due to Nevue's complaints of neck and abdominal pain after the accident. In other words, Close argues that the *Finch* holding applies only if the person signing the release was not aware of *any* injury prior to signing. We do not believe that the holding in *Bennett* was intended to be that sweeping. Under these facts, we conclude that the *Finch* rule is applicable if there was "no known *back* injury" at the time Nevue signed her release. Taking the facts and reasonable inferences from the facts in the light most favorable to Nevue, there is a genuine issue of material fact as to whether Nevue knew of any injury to her back at the time she signed the release and whether her release was "fairly and knowingly made" under the rule articulated in *Finch*. Accordingly, we reverse the order granting summary judgment of dismissal and remand for further proceedings consistent with this opinion.[1]

ALEXANDER and SEINFELD, JJ., concur.

Reconsideration denied December 17, 1992.

Review granted at 121 Wn.2d 1008 (1993).

---

[1]Nevue also contends that the release is voidable on the grounds of mutual mistake. We need not reach this issue, given our resolution of the prior issue.