[No. 60105-4.  En Banc.  February 17, 1994.]

SHARON NEVUE, *Respondent*, v. ADOLPH CLOSE, ET AL, *Petitioners.*

*Reed McClure,* by *William R. Hickman* and *Pamela A. Okano,* for petitioners.

*Hugh M. Robinson,* for respondent.

*Constance D. Gould* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioners.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondent.

BRACHTENBACH, J. — Plaintiff was a passenger in a car rearended by defendant's truck. Defendant was insured by Safeco Insurance Company whose adjuster obtained, a few weeks later, a general release from plaintiff for payment of $50, plus medicals.

The validity of the release is at issue. The trial court, relying on the release, granted summary judgment to defendant, Adolph Close. The Court of Appeals reversed holding there was a material question of fact whether the release was " 'fairly and knowingly made.' " *Nevue v. Close,* 67 Wn. App. 635, 638, 838 P.2d 132 (1992) (quoting *Finch v. Carlton,* 84 Wn.2d 140, 146, 524 P.2d 898 (1974)). We affirm the Court of Appeals and remand for further proceedings.

At the time of the collision, plaintiff, Sharon Nevue, was 4 months' pregnant. She was lying down in the back seat; the impact threw her against the back of the front seat.

Plaintiff was examined at a hospital emergency room. Her main expressed concern was her pregnancy, but she also complained of neck and abdominal pain. After x-rays, the diagnosis was neck strain with directions to take Tylenol for any neck pain. The neck discomfort abated within 24 hours. At some later stage, plaintiff experienced neck and low back pains, but attributed these to her pregnancy.

The time of onset of these later developed pains and their medical nature are not disclosed by the record. There is no medical evidence beyond limited evidence from the emergency room treatment.

The form release in question provided:

It is understood and agreed that this is a FULL AND FINAL RELEASE in full compromise settlement of all claims of every nature and kind whatsoever, and releases all claims whether known or unknown; suspected or unsuspected.

Our holdings in two cases provide the background for a decision in this case. In *Finch v. Carlton*, 84 Wn.2d 140, 144, 524 P.2d 898 (1974), the court adopted the majority rule concerning releases involving personal injuries. The court stated the majority rule as follows:

The better reasoned rule adopted by an overwhelming majority of jurisdictions permits the avoidance of a release in circumstances where later-discovered injuries were clearly not contemplated by the parties at the time of release.

*Finch*, at 144. The court went on to hold:

In our opinion, the majority rule is the more equitable and reasoned doctrine. The rationale employed by a majority of jurisdictions does not permit the avoidance of a release merely because of the discovery of a previously unknown injury, but instead allows an inquiry into whether the release was fairly and knowingly made.

*Finch*, at 145-46.

The *Finch* holding continues to be the majority rule.

It has been widely held that the express language of a release is not conclusive, but rather that the courts will look to what was actually within the contemplation of the parties *at the time of the release* in determining whether there was such a mistake as to justify avoidance . . ..

(Italics ours.) Michael A. DiSabatino, Annot., *Modern Status of Rules as to Avoidance of Release of Personal Injury Claim on Ground of Mistake as to Nature and Extent of Injuries*, 13 A.L.R.4th 686, 692 (1982).

*Finch v. Carlton, supra*, involved injuries which were completely unknown at the time of the release; thus, it is distinguishable from the facts in this case, as shown hereafter.

In the second case, *Bennett v. Shinoda Floral, Inc.*, 108 Wn.2d 386, 739 P.2d 648 (1987), the plaintiffs, when they signed their respective releases, knew they had been injured, but did not know the extent or consequences of

those injuries. The court held the releases were binding, limiting the *Finch* holding "only to situations where there is no known injury at the time the release is executed." *Bennett,* at 396.

*Bennett* has been criticized. The Corbin treatise concludes it is wrong. 3 A. Corbin, *Contracts* § 598, at 686 (Supp. 1992). A law review article makes an extensive analysis in disapproving of the rationale and possible broad holding. Robert A. Radcliffe, Note, *When Should the Trier of Fact Determine the Validity of Personal Injury Releases?*— Bennett v. Shinoda Floral, Inc., *108 Wash. 2d 386, 739 P.2d 648 (1987).,*63 Wash. L. Rev. 749, 756 (1988).

Nonetheless, this decision need not reject or modify either *Finch* or *Bennett.* The facts here presented do not fall within the facts of either case. Here there was a known minor neck sprain which was no longer bothering plaintiff when the release was signed. It is a latent back injury which developed after the release was signed that was not known or contemplated in fact by either the plaintiff or the insurance adjuster.

The limited facts developed by affidavits demonstrate how and why the later-discovered back injury was not contemplated by the parties and should not be foreclosed by the "boiler-plate" general release language.

Bearing in mind that this case was decided on a motion for summary judgment, the facts should be examined. The plaintiff's affidavit states:

> I did not complain of back pain at the emergency room. I did indicate that I had some neck pain, and I was examined for that. I was told that everything looked o.k. in that regard . . ..
>
> Upon leaving the emergency room, I was of the belief that I had not been injured in the motor vehicle accident. . . . I did not complain to anyone of back injuries at that time, because I had no idea that my back had been injured.

Clerk's Papers, at 16-17.

Note should be made of the approach of the insurance adjuster who initiated the telephone calls to plaintiff inquiring as to what it would take to settle the case. Plaintiff indicated she had not been injured. The adjuster said Safeco

"very much wanted to close their files." Plaintiff knew the potential defendant, the insured, was a very elderly man. Plaintiff's testimony is telling:

> Ms. Williams [the adjuster] indicated that I would have to testify against him unless we could get this matter settled. I thought she was referring to criminal problems on his part. I did not want to do that, and thought that my signing the release would have something to do with my not having to testify against him.

Clerk's Papers of Plaintiff, at 18-19. The adjuster does not deny the contents of this allegation by the plaintiff. The adjuster's only conclusory response, probably inadmissible, was the "I never pressured them for any settlement." Clerk's Papers of Defendant, at 62.

Further, the adjuster admits that the only discussion with plaintiff about her injuries was that "her *neck pain* had resolved itself or was improving without additional medical treatment." (Italics ours.) Clerk's Papers of Defendant, at 61. There was no discussion about any *back* injury which is the only proper subject of this action.

It might well be found, by a trier of fact, that the parties never contemplated *any* payment for pain and suffering and certainly not for unknown injuries. After being told that plaintiff had not been injured, the adjuster said plaintiff would be paid $150 "for my inconvenience". Plaintiff continues:

> My husband was also involved in the accident, and everyone was in agreement, including Safeco, that he was not injured. He also received money [$100] for signing a release. I did not think that this in any way had anything to do with settling claims for injuries because I did not believe I was injured. I was told by Ms. Williams that my settlement would be $50.00 more than my husband's because I was pregnant at the time, and probably had been more inconvenienced.

Clerk's Papers of Plaintiff, at 19.

The declaration of the emergency room admitting nurse supports plaintiff's statements. Her clinical notes state: " 'Patient to emergency room complaining of neck pain and upper abdominal discomfort . . .' ". Further, "Dr. Kihichak

had diagnosed her situation as neck sprain." Clerk's Papers of Defendant, at 54-55.

■■ We hold that where there are known injuries, here the neck sprain, the release is binding as to those injuries and as to the unknown consequences of the *known* injury. However, as to an injury unknown to the plaintiff, and not within the contemplation of the parties to the release, the release should not be binding per se. The plaintiff should bear the burden of proving that the injury was reasonably unknown and not within the contemplation of the parties. To paraphrase the dissent of Justice Dolliver in *Bennett*, only if the trier of fact determines that the parties specifically contemplated and bargained for the assumption of risk of future unknown injuries can the release be held to have been fairly and knowingly made as to those injuries. *Bennett*, at 404.

Our holding is in accord with the clear majority of other jurisdictions.

> When the parties conclude a settlement on the assumption or belief that the plaintiff has one kind of injury when in fact her injury is of a materially different nature, courts usually say that the settlement can be avoided and that the plaintiff may proceed with her tort claim.

2 D. Dobbs, *Remedies* § 11.9, at 774 (1993).

> Although some decisions give virtually automatic or conclusive effect to a clause that releases unknown injuries, most seem to hold that such a provision is not conclusive.

(Footnote omitted.) 2 D. Dobbs, at 775.

> Regardless of the parties' real or expressed intent to cover or exclude unknown injury, a release provision excluding such an injury may be "disregarded as unconscionable" if it flies in the face of the parties' basic assumptions as we would otherwise understand them.

(Footnote omitted.) 2 D. Dobbs, at 775-76.

The Restatement of Contracts recognizes that factual circumstances may be cause for setting aside a general release.

> Although the parties may fix the assumptions on which the contract is based by an express provision, fairly bargained for, the common recital that the release covers all injuries, known or unknown and of whatever nature or extent, may be disregarded as unconscionable if, in view of the circumstances of

the parties, their legal representation, and the setting of the negotiations, it flies in the face of what would otherwise be regarded as a basic assumption of the parties.

Restatement (Second) of Contracts § 152, comment *f*, at 391 (1981).

We affirm the Court of Appeals and remand for further proceedings.

UTTER, SMITH, JOHNSON, and MADSEN, JJ., concur.

DOLLIVER, J. (dissenting) — I dissent. In *Bennett v. Shinoda Floral, Inc.*, 108 Wn.2d 386, 739 P.2d 648 (1987), the overwhelming majority of the court established the principle of law that releasors assume the risk of known uncertainties. We limited the "fairly and knowingly made" test announced in *Finch v. Carlton*, 84 Wn.2d 140, 524 P.2d 898 (1974) to its facts and concluded the policy favoring finality of settlements was outweighed by the policy favoring the just compensation of accident victims only when the releasor had "no knowledge [of] *any* personal injury". (Italics mine.) *Bennett*, 108 Wn.2d at 395.

I am not persuaded this court should so easily sidestep a rule of law to accommodate facts which are no more compelling than those present in *Bennett*.

[I]t was the duty of the court not to vacillate, but to adhere to the law as pronounced by it, *stare decisis*; for such adherence, in the main, is necessary to preserve the certainty, stability and symmetry of our jurisprudence. . . .

*State ex rel. Yates-American Mach. Co. v. Superior Court*, 147 Wash. 294, 298, 266 P. 134 (1928). The court should either overrule *Bennett* or follow the principle of law established by it.

ANDERSEN, C.J., and DURHAM and GUY, JJ., concur with DOLLIVER, J.

Reconsideration denied April 28, 1994.