36 P.3d 1065 (2001)
109 Wash.App. 405
OREGON MUTUAL INSURANCE COMPANY, Respondent,
v.
George BARTON, Appellant.
No. 19151-6-III.
Court of Appeals of Washington, Division 3, Panel Six.
December 13, 2001.
*1067 Timothy H. Esser, Nuxoll, Libey, Ensley, et al, Pullman, for Appellant.
Irvin "Buddy" Paul, Brad E. Smith, Huppin, Ewing, Anderson & Morrison, P.S., Spokane, for Respondent.
*1066 SWEENEY, J.
An insurance settlement induced by fraudulent misrepresentations is void. But the misrepresentations must be relevant and must predate the settlement. Here, Oregon Mutual Insurance Company accused its insured, George Barton, of arson, but only after it had agreed to a settlement, issued the settlement drafts along with a proof of loss statement, and after Mr. Barton had negotiated the drafts. It then sued to void the settlement agreement and its policy with Mr. Barton. A jury found that Mr. Barton did not commit arson but did misrepresent aspects of his claimbut only after settlement. The dispositive question before us is whether misrepresentations by an insured after settlement, which could not have induced the settlement, voided the insurance policy. We conclude that they did not and therefore reverse the trial court's decision.

FACTS
In late July 1998, Mr. Barton bought a 1990 Freightliner tractor and grain-hauling trailer. He insured both with Oregon Mutual. He planned to pay for the rig with his share of the proceeds of the upcoming harvest from the farm where he was a tenant farmer. But before the harvest, Mr. Barton's landlord evicted him from tenancy of the farm and obtained a $49,000 judgment against him. Mr. Barton's total indebtedness exceeded $200,000. On August 17, 1998, the court entered an order denying Mr. Barton an interest in the harvest.
At two in the morning of August 18, 1998, an arson fire destroyed the tractor. The tractor was parked in front of Mr. Barton's home. He was at home and in bed. The tractor was fully fueled and had been parked for a couple of weeks. A neighbor heard two car doors slam and a vehicle rapidly accelerating away from the scene.
Tom Ishii is Oregon Mutual's claims manager. Mr. Ishii knew that the loss was caused by arson. He knew that Mr. Barton had the opportunity to commit the arson. And he knew that Mr. Barton was in dire financial straits. Mr. Barton and Oregon Mutual nevertheless negotiated a compromise settlement. Oregon Mutual's independent adjuster inspected the rig and did some "nitty-gritty" negotiation with Mr. Barton, after which Mr. Ishii gave the adjuster authority to settle. Report of Proceedings of Jan. 12, 13, 2000(RP) at 31.
On September 11, 1998, Oregon Mutual mailed drafts to Mr. Barton, settling the claim. A box marked "full settlement" (as opposed to "partial payment") was checked. The drafts were accompanied by a letter from Mr. Ishii confirming the settlement. Mr. Barton cashed the drafts on September 14. Mr. Barton immediately closed a sale on a replacement tractor and insured it.
On September 15, a Washington State Patrol trooper told Mr. Ishii that Mr. Barton had not been ruled out as a suspect in the arson. This was confirmed by the Columbia County Fire Marshall and the county sheriff's office. Mr. Ishii stopped payment on the drafts and reopened the investigation. On *1068 September 18, Mr. Ishii wrote to Mr. Barton that the company was resuming its investigation, reserving all rights, and that it was understood that Mr. Barton also reserved all rights. Mr. Barton consented to an examination under oath, which took place on October 29.
Meanwhile, on October 8, the sheriff's office notified Mr. Ishii that the arson investigation was complete but the results were inconclusive. On March 21, 1999, Oregon Mutual informed Mr. Barton it was voiding the insurance policy because the company believed he was personally involved in causing the fire. Oregon Mutual also claimed that Mr. Barton had made material misrepresentations about prospective work opportunities for the tractor during his post-settlement statement under oath.
Oregon Mutual sued for a declarative judgment that the policy was void because Mr. Barton had caused the loss and made material misrepresentations. Mr. Barton counterclaimed for enforcement of the settlement agreement. Oregon Mutual replied that the settlement agreement was procured by fraud and misrepresentation.
The matter was tried to a jury. During deliberations, the court responded to a jury question by instructing the jury that material misrepresentations either before or after settlement would void the underlying policy. By special verdict, the jury found that Mr. Barton was not responsible for the arson, but that he did intentionally conceal or misrepresent a material fact at some point during the claims process.
The court entered judgment on the verdict in favor of Oregon Mutual. Mr. Barton moved for judgment notwithstanding the verdict, still contending that, once settlement was reached, the doctrine of accord and satisfaction made his subsequent statements irrelevant. The court denied his motion.

SETTLEMENT AGREEMENT
Mr. Barton concedes that, if he set the fire, the insurance settlement was induced by fraud and should be set aside. But he insists that, since he did not set the fire, material misrepresentations could only be made to Oregon Mutual before the settlement. The trial court, however, agreed with Oregon Mutual that misrepresentations made six weeks after the settlement were material. The court therefore refused either to limit the issues for trial to whether Mr. Barton committed the arson, or to instruct the jury that the claims process ended with settlement. Mr. Barton argues that this was error.
Oregon Mutual responds that after Mutual of Enumclaw Insurance Co. v. Cox[1] the usual rules governing fraud no longer apply to insurance disputes. It argues that the holding of Cox requires that the policy be voided whenever an insured makes any misrepresentation at any time during the claims process. And here, Oregon Mutual contends, the claims process was ongoing when these misrepresentations were made.
Our analysis is in three steps:
(1) Did the settlement agreement constitute an accord and satisfaction?
(2) Does the doctrine of accord and satisfaction apply to insurance contracts?
(3) Is Cox authority for the proposition that even subsequent misrepresentations will void an insurance settlement?

STANDARD OF REVIEW
We review the trial court's decisions de novo.
DENIAL OF PARTIAL SUMMARY JUDGMENT
We review partial summary judgments de novo. Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 665, 15 P.3d 115 (2000). This court engages in the same inquiry as the trial court. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). We view all facts and reasonable inferences in a light most favorable to the nonmoving party to determine whether there is a genuine issue of any fact upon which the outcome of the litigation depends in whole or in part. CR 56(c); Fancher Cattle Co. v. Cascade Packing, Inc., 26 Wash.App. 407, 408, 613 P.2d 178 (1980).
*1069 JURY INSTRUCTIONS
We review the jury instructions here de novo. Instructions must allow each party to argue its theory of the case, not mislead the jury and, when taken as a whole, properly inform the jury of the applicable law. Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265 (2000).
DENIAL OF JUDGMENT NOTWITHSTANDING THE VERDICT
In ruling on a motion for judgment notwithstanding the verdict, a trial court exercises no discretion. Therefore, review is de novo. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 98, 882 P.2d 703 (1994). The court accepts the truth of the nonmoving party's evidence and draws all reasonable inferences in its favor. The court will grant the motion only if there is no justifiable evidence upon which the jury's verdict might be sustained. Id.

ACCORD AND SATISFACTION
When the debtor tenders a draft in full payment of a debt, acceptance by the creditor creates a settlement contract binding on both parties. Hynes v. Hynes, 28 Wash.2d 660, 672, 184 P.2d 68 (1947). Absent an express reservation of rights, such a settlement constitutes a complete accord and satisfaction of all claims. Mut. of Enumclaw Ins. Co. v. State Farm Mut. Auto. Ins. Co., 37 Wash.App. 690, 694, 682 P.2d 317 (1984); 6 JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 3977, at 662 (1972). Here, the original settlement was not subject to any reservation. It was not until a week after the draft and proof of loss were tendered that Mr. Ishii wrote to Mr. Barton informing him that Oregon Mutual was resuming its investigation and reserving all rights.
Compromise settlements are governed by the law of contracts. Settlement contracts are then subject to judicial interpretation in light of their language and the circumstances surrounding their making. Stottlemyre v. Reed, 35 Wash.App. 169, 171, 665 P.2d 1383 (1983).
An accord and satisfaction is a new contracta contract complete in itself. Evans v. Columbia Int'l Corp., 3 Wash.App. 955, 957, 478 P.2d 785 (1970) (citing 1 AM. JUR.2D Accord and Satisfaction § 12 (1962)). Its enforceability does not depend on the validity of the antecedent claim. Each party's promise in the new agreement is supported by an entirely new considerationthe return promise of the other. N.W. Motors, Ltd. v. James, 118 Wash.2d 294, 305, 822 P.2d 280 (1992) (citing 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1312, at 261 (1962)). And so the accord is enforceable as a contractual agreement in its own right. Perez v. Pappas, 98 Wash.2d 835, 843, 659 P.2d 475 (1983). It cuts off all defenses and arguments based on the underlying contract. N.W. Motors, 118 Wash.2d at 305, 822 P.2d 280.
The court presumes that a general settlement agreement embraces all existing claims arising from the underlying incident. State Farm, 37 Wash.App. at 694, 682 P.2d 317. A strong presumption attaches that the parties have considered and settled every existing difference. Burrows v. Williams, 52 Wash. 278, 287, 100 P. 340 (1909). To overcome this strong presumption requires "testimony so clear and convincing that the court can free the transaction from all doubt as to the intent of the parties." Id.

INSURANCE IS NO EXCEPTION
Generally insurance settlements are vigorously upheld. The law favors the private settlement of disputes and is inclined to view them with finality. Stottlemyre, 35 Wash.App. at 173, 665 P.2d 1383. In Stottlemyre, an insured belatedly discovered additional personal injury and loss. The court upheld the settlement, holding that the state's interest in fully compensating accident victims was secondary to the prevailing interest in the finality of settlements.
The courts will enforce a settlement agreement so long as it was fairly and knowingly made. Finch v. Carlton, 84 Wash.2d 140, 146, 524 P.2d 898 (1974); Stottlemyre, 35 Wash.App. at 173, 665 P.2d 1383. *1070 Factors considered in determining whether the agreement was fair and knowing include: the bargaining positions and relative sophistication of the parties; the amount of consideration; the likelihood of insufficient knowledge concerning future developments; and the haste with which the release was obtained. Finch, 84 Wash.2d at 146, 524 P.2d 898; Stottlemyre, 35 Wash.App. at 173, 665 P.2d 1383.
Applying those factors here suggests no reason to make an exception to the presumption of finality. The insurer operated from a take-it-or-leave-it bargaining position vis-a-vis the insured. Its claims adjuster was experienced in settling claims; the insured was not. The consideration was equalthe promise of each party to walk away. It is true that relevant information was highly likely to be yet discovered, given that the county sheriff and Washington State Patrol were still investigating. And the settlement was reached with considerable haste, within three weeks of the loss. But our strong presumption is that Oregon Mutual considered the open investigation in settling the claim. Burrows, 52 Wash. at 287, 100 P. 340.

APPLICATION OF COX

Oregon Mutual contends that the holding of Mutual of Enumclaw Insurance Co. v. Cox requires that an insurance policy be voided for any misrepresentation touching on the claim, even misrepresentations which follow the settlement. Mut. of Enumclaw Ins. Co. v. Cox, 110 Wash.2d 643, 649, 757 P.2d 499 (1988).
In Cox, Dr. Cox's home burned to the ground. He padded the value of his lost personal property. The fraudulently added value was outside his maximum coverage limits. The misrepresentations thus did not affect the payoff amount. The court nonetheless enforced the policy's provision voiding the entire contract for misrepresentation by the insured. In the interests of discouraging insurance fraud, the court held that fraud at any point in the claims process voids the entire contract, whether or not relied on by the insurer. Id. at 649-50, 757 P.2d 499.
Cox is distinguishable. In Cox, the claims process was still ongoing when Dr. Cox made his misrepresentations. The company's payments to Dr. Cox were partial payments, not a full and final settlement. The dubious aspects of the claim remained open and in dispute. Here, there was no partial payment. All disputes were resolved by the settlement. The drafts have two boxes, one for partial payment and one for full settlement. The full settlement boxes are marked with Xs; the partial payment boxes are not. The alleged misrepresentations were made in Mr. Barton's examination under oath six weeks after this settlement had been reached. Any misrepresentations could not then have been made for the purpose of inducing the settlement.
Moreover, disqualifying misrepresentations must be relevant. Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp., 617 N.W.2d 67, 74 (Minn.2000) (concealment of material facts regarding underlying contract did not preclude enforcement of accord and satisfaction where there was no connection between alleged fraud and tender of accord). To be relevant, any misrepresentation, either before or after this settlement, would have to falsely exculpate Mr. Barton of arson. But the jury found he did not commit arson.
Oregon Mutual contends that Mr. Barton lied in his examination under oath, falsely stating that he had an offer of commercial work with the tractor before the fire, when in fact the deal was made after. Oregon Mutual contends the purpose of this lie was to bolster Mr. Barton's assertion that the rig was worth "more alive than dead," and thus he had no motive for arson. RP at 72. Maybe. But it could not have induced Oregon Mutual to settle this claim.
Oregon Mutual also contends that Mr. Barton lied to firefighters about the ownership of the tractor and that he must have lied to a fireman about a CB radio having been stolen, because there was no evidence of force and the CB cables were neatly folded. Mr. Barton explained that he ran the CB from a device clipped to the antenna. And the CB unit was not mounted on a bracket, but rested in a cubbyhole. But again, we are *1071 at a loss to understand how misrepresentations to firemen at the scene would affect the insurance coverage and whether to settle. That is, unless Mr. Barton were guilty of arson. And the jury concluded that he was not.

EFFECT OF STOPPING PAYMENT
Oregon Mutual argues in the alternative that, by stopping payment on the settlement draft, it effectively voided the agreement and reopened the negotiation process. This is not the rule.
A contract binding on both parties is formed when a draft, tendered as full payment, without any express reservation of rights, is accepted by the insured. Hynes, 28 Wash.2d at 672, 184 P.2d 68; State Farm, 37 Wash.App. at 694, 682 P.2d 317. Here, Oregon Mutual mailed drafts with a letter saying they represented full payment. Mr. Barton cashed them. Moreover, tendering payment is not absolutely necessary. An oral agreement is binding. Stottlemyre, 35 Wash.App. at 171-72, 665 P.2d 1383 (oral settlement binding unless expressly conditioned on execution of written documents); Gill v. Waggoner, 65 Wash.App. 272, 275-76, 828 P.2d 55 (1992) (settlement based on unilateral mistake, communicated and accepted by telephone, binding on insurer).
Just as significantly, the policy considerations driving Cox are not present here. Mr. Barton did not set fire to the tractor, he did not file a fraudulent claim, and he did not try to recover more than the claim was worth.
As in Stottlemyre and Gill, the prevailing state interest is to encourage private settlements by upholding the presumption of finality. Oregon Mutual does not suggest when the court should close the door on disputes, if not at the point of settlement.

IMPLIED WAIVER
Oregon Mutual argues for the first time on appeal that Mr. Barton's cooperation after the settlement effectively waived his right to enforce the settlement.
This court will generally not address a claim of error not raised in the trial court. RAP 2.5(a); Nelson v. McGoldrick, 127 Wash.2d 124, 140, 896 P.2d 1258 (1995). In particular, a claim of waiver or estoppel should be raised at trial. Kleyer v. Harborview Med. Ctr. of Univ. of Wash., 76 Wash. App. 542, 549, 887 P.2d 468 (1995).
Further, Oregon Mutual offers no authority for this contention. Argument must be supported by citation to legal authority. RAP 10.3(a)(5); Kagele v. Aetna Life & Cas. Co., 40 Wash.App. 194, 196, 698 P.2d 90 (1985). If no authority is cited, we may presume that counsel, "after diligent search, has found none." Roberts v. Atlantic Richfield Co., 88 Wash.2d 887, 895, 568 P.2d 764 (1977).
Moreover, our cursory review of the law suggests no basis for the argument. First of all, we note that an implied waiver of contractual rights is not favored. Steele v. Lundgren, 85 Wash.App. 845, 852, 935 P.2d 671 (1997). The intention to relinquish a contractual right must therefore be proved. Reynolds Metals Co. v. Elec. Smith Constr. & Equip. Co., 4 Wash.App. 695, 700, 483 P.2d 880 (1971). The party claiming waiver has a heavy burden of proof. Steele, 85 Wash.App. at 852, 935 P.2d 671.
The only case cited by Oregon Mutual is Cox, with its strong disfavor of insurance fraud. Oregon Mutual contends this should support Mr. Barton's waiver. But the holding in Cox was that a party to an insurance contract does not waive its right to void the policy by partially performing on the contract.
Here, the whole contest at trial was over whether Mr. Barton's conduct deprived him of the right to enforce the settlement, or whether Oregon Mutual's conduct deprived it of the right to void the policy. Nobody waived anything. If Mr. Barton burned his tractor, then the policy is void. If, as the jury concluded, he did not, then the policy is not void.

ATTORNEY FEES
A party may recover attorney fees and costs on appeal when granted by applicable law. RAP 18.1(a). When the conduct *1072 of the insurer imposes upon the insured the burden of compelling the insurer to honor its commitment, the insured is entitled to fees. Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 53, 811 P.2d 673 (1991). Accordingly, Mr. Barton's fee request is granted.

CONCLUSION
Oregon Mutual and Mr. Barton reached an accord and satisfaction. A jury concluded that Mr. Barton did not commit the arson which destroyed his tractor. And we conclude that subsequent misrepresentations which did not induce the settlement agreement did not void the original policy. The judgment of the trial court is therefore reversed and Mr. Barton is awarded fees.
WE CONCUR: KURTZ, C.J., and SCHULTHEIS, J.
NOTES
[1] 110 Wash.2d 643, 757 P.2d 499 (1988).