IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 54513-6-II |
| JESSA ROSE TYNER, n.k.a. BLACKHURST, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| JASON SCOTT TYNER, | |
| Appellant. | |

LEE, J. — Jason S. Tyner appeals the trial court's order denying his petition to modify spousal maintenance paid to his former spouse, Jessa R. Tyner (n.k.a. Blackhurst). Tyner argues that the trial court erred by concluding that the award of spousal maintenance survives Blackhurst's remarriage under the dissolution decree and that Blackhurst's remarriage to a person with significant income was not a substantial change in circumstances justifying modification of spousal maintenance.

We hold that the trial court did not err by concluding that the award of spousal maintenance survives Blackhurst's remarriage under the dissolution decree. However, we hold that the trial court erred by failing to consider whether Blackhurst's current spouse's higher income was a substantial change in circumstances justifying modification of spousal maintenance. Accordingly,

we reverse the trial court's order denying Tyner's petition to modify spousal maintenance and remand for proceedings consistent with this opinion.

FACTS

Tyner and Blackhurst finalized their dissolution by agreement on March 15, 2018. The dissolution decree provides that Tyner will pay spousal maintenance to Blackhurst for 10 years. The dissolution decree states:

> 13. **Spousal Support** (maintenance/alimony)
>
> ☒ The (*check one*): ☒ Respondent must pay spousal support as follows:
>
> Years 1 through 4:   $5,000 per month
>
> Years 5 and 6:       $4,000 per month
>
> Years 7 and 8:       $3,000 per month
>
> Years 9 and 10:      $2,500 per month
>
> Each payment shall be due on the 5th day of the month, beginning March 5, 2018.
>
> **Termination:** Spousal support will end when either spouse dies, or the spouse receiving support gets married or registers a new domestic partnership *unless* a different date or event is provided below:
>
> ☒ Date: <u>The husband shall pay maintenance for 10 years. The last payment shall be due on March 5, 2028.</u>
> **Make all payments to** (*check one*):
>
> ☒ Directly to the Petitioner.

Clerk's Papers (CP) at 4. This spousal maintenance provision was provided for on a mandatory pattern form for dissolution decrees provided by the State from 2016 to 2019. At the time of the dissolution, Tyner was self-represented, and Blackhurst was represented by an attorney. Before signing the dissolution decree, Tyner went through each line of the agreement with members of his own family, with Blackhurst's father, and with Blackhurst's lawyer.

Blackhurst remarried on July 13, 2019, and Blackhurst's current spouse's income is $215,000.00 per year. Blackhurst was a stay-at-home mother during her marriage to Tyner and is not currently employed. Tyner has an income of approximately $140,000.00 per year.

Tyner sought modification of the spousal maintenance award based on Blackhurst's remarriage to a person earning significant income and relocation with their children to Oregon. After an evidentiary hearing on Tyner's modification request, the trial court denied Tyner's request for modification in an oral ruling. The trial court later expressly incorporated its findings from its oral ruling into its final order denying Tyner's petition to modify spousal maintenance.

The trial court found that, per the dissolution decree, the spousal maintenance award survives Blackhurst's remarriage. The trial court stated that the award survived because "there is clear and unequivocal intent shown by the language in the final divorce order to make maintenance in effect for a specific time and continue after remarriage." 2 Verbatim Report of Proceedings (VRP) (Mar. 4, 2020) at 16. The trial court did not consider Tyner's subjective intent because there was no ambiguity in the language of the spousal maintenance provision.

The trial court denied Tyner's request for modification of the award because Tyner "knew or should have known" that Blackhurst could remarry, Blackhurst's remarriage was a circumstance Tyner "could have contemplated" and "objectively should have [] contemplated" because the dissolution decree expressly addressed Blackhurst's remarriage in the spousal maintenance provision, and Tyner went over drafts of the decree step by step. 2 VRP (Mar. 4, 2020) at 18. The trial court noted, however, that "Tyner clearly did not contemplate subjectively any remarriage of his ex-wife." 2 VRP (Mar. 4, 2020) at 19.

3

The trial court also found that Blackhurst's current spouse's higher income did not justify modification because it was "connected to the possibility of remarriage" which was "expressly addressed in the divorce order" and was therefore "within the sphere of possible contemplation at the time of the dissolution." 2 VRP (Mar. 4, 2020) at 19.

Tyner appeals.

## ANALYSIS

A.    SPOUSAL MAINTENANCE PROVISION IN DISSOLUTION DECREE

Tyner argues that the trial court erred by concluding that the spousal maintenance award survives Blackhurst's remarriage because the parties never agreed to spousal maintenance surviving Blackhurst's remarriage and because the spousal maintenance provision in the decree misstates the law.[1]  We disagree.

1.       The Decree Unambiguously States That Spousal Maintenance Survives Remarriage

a.       Standard of review

We review questions of law de novo.  *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 317, 472 P.3d 990 (2020).  "[C]ontract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence."  *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 711, 334 P.3d 116 (2014).

Here, the trial court heard testimony and considered documentary evidence before interpreting the spousal maintenance provision in the dissolution decree.  However, as discussed below, the contract presents no ambiguity, and no extrinsic evidence is required to interpret the

---

[1] Tyner also argues that he is entitled to be compensated for maintenance payments made since Blackhurst's remarriage.  Because we hold that Tyner's spousal maintenance obligation continues, we do not address Tyner's argument.

contract terms. Therefore, interpreting the spousal maintenance provision is a question of law that we review de novo. *See Young*, 196 Wn.2d at 317; *Viking Bank*, 183 Wn. App. at 711.

> b.     Interpretation of spousal maintenance provision

"A contract is not ambiguous when a reading of the contract as a whole leads to only one meaning." *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 917, 468 P.2d 666 (1970). "A contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings." *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074, *review denied*, 181 Wn.2d 1008 (2014).

We "follow the objective manifestation theory of contracts." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Under this approach, we "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* "[T]he subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Id.* at 504. While surrounding circumstances and other extrinsic evidence can be considered, they must "be used 'to determine the meaning of *specific words and terms used*' and not to 'show an intention independent of the instrument' or to 'vary, contradict or modify the written word.'" *Id.* at 503 (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)).

Here, the dissolution decree expressly states that spousal maintenance would end upon either party's death or Blackhurst's remarriage "*unless* a different date or event is provided below." CP at 4. The parties checked the "Date" box immediately below this statement and provided that "[t]he husband shall pay maintenance for 10 years. The last payment shall be due on March 5, 2028." CP at 4. The intent in this dissolution decree provision is clear: the parties intended for

spousal maintenance payments to continue for 10 years, until March 5, 2028, instead of ending upon remarriage or death.

The dissolution decree is not ambiguous; rather, the language in the dissolution decree is clear and is subject to only one meaning. Because we can ascertain the parties' intent from the actual words in their agreement, Tyner's subjective intent is irrelevant. Any extrinsic evidence of Tyner's intent cannot be used to delete or contradict the provision expressly providing that spousal maintenance payments will continue for 10 years instead of ending upon Blackhurst's remarriage. Therefore, the dissolution decree shows the parties agreed that spousal maintenance would survive Blackhurst's remarriage.[2]

2.      The Spousal Maintenance Provision Does Not Misstate The Law

RCW 26.09.170(2)[3] provides a statutory presumption that

> [u]nless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance or registration of a new domestic partnership of the party receiving maintenance.

---

[2] Tyner also argues that there is latent ambiguity justifying the use of extrinsic evidence. A latent ambiguity is one not outwardly apparent from the face of the [contract] but which becomes apparent where, for example, the identity of the beneficiary becomes obscure or uncertain when applying the instrument to the facts as they exist." *Vadman v. Am. Cancer Soc'y*, 26 Wn. App. 697, 699, 615 P.2d 500 (1980). In *Vadman*, there was confusion over a reference to the "National Cancer Foundation" and who was the intended beneficiary. *Id.* at 698-99.

Here, there is no obscure or uncertain term in the spousal maintenance provision that could apply to more than one person or thing. The language of the spousal maintenance provision does not contain ambiguities, latent or otherwise, and it does not require extrinsic evidence for interpretation. *See Jacoby*, 77 Wn.2d at 917; *Hearst*, 154 Wn.2d at 503.

[3] RCW 26.09.170 was amended in 2020. However, no substantive changes were made affecting this opinion. Therefore, we cite to the current statute.

Parties to a dissolution are presumed to incorporate the existing statutes into the dissolution decree unless they "expressly declare their mutual intention to so exclude." *In re Marriage of Briscoe*, 134 Wn.2d 344, 348, 949 P.2d 1388, 971 P.2d 500 (1998). This express agreement must be a "'clear manifestation of intent.'" *Id.* (quoting *Wagner v. Wagner*, 95 Wn.2d 94, 99, 621 P.2d 1279 (1980)). The agreement must be "'directly and distinctly stated or expressed rather than implied or left to inference.'" *Id.* (quoting *In re Marriage of Allen*, 78 Wn. App. 672, 678, 898 P.2d 1390 (1995)) (internal quotations omitted).

Tyner relies on *Allen*, 78 Wn. App. 672, to support his argument that the spousal maintenance provision misstates the law because it is contrary to the statutory presumption. *Allen* fails to support Tyner's argument and is distinguishable.

In *Allen*, the court interpreted a spousal maintenance provision based on a mandatory dissolution decree form where the parties could check one of two boxes: one for the obligation ending upon death or remarriage and one for "Other." *Id.* at 675. The parties did not check either box but instead wrote in a date of final payment above both boxes. *Id.* The court held that the parties had not expressly stated their intent to deviate from the statutory presumption that spousal maintenance terminates upon remarriage, so the obligation ended upon remarriage. *Id.* at 679. In so holding, the court stated that

> [b]ecause the form does not change the statutory presumption, merely retaining language in the form, without any effort to clarify it or to mark either of the applicable boxes beside it, is not sufficient to overcome the statutory presumption. The law must drive the forms, not vice versa.

*Id.* at 678-79.

Contrary to Tyner's argument, *Allen* did not state that the spousal maintenance provision misstated the law. Also, unlike in *Allen*, the spousal maintenance provision here expressly

7

incorporates the statutory presumption by including language stating that "[s]pousal support will end when . . . the spouse receiving support gets married . . . *unless*" the parties provide a different date or event. CP at 4. The language preceding "unless" is the default (i.e., the statutory presumption that spousal maintenance terminates upon remarriage). The parties must affirmatively provide their own language below this statement to override the statutory presumption and satisfy RCW 26.09.170(2)'s provision that the presumption is overridden when "agreed in writing or expressly provided in the decree." The parties here did just that.

The spousal maintenance provision clearly states that the spousal maintenance ends on March 5, 2028, instead of ending upon remarriage or death. That statement is a "clear manifestation of intent" to waive the statutory presumption that spousal maintenance ends upon remarriage. *See Briscoe*, 134 Wn.2d at 348. Therefore, the default statutory presumption no longer applies by the parties' express agreement in the dissolution decree. *See id.*

The spousal maintenance provision in the dissolution decree did not misstate the law. Accordingly, the trial court did not err by concluding that the spousal maintenance award survives Blackhurst's remarriage.[4]

B.       DENIAL OF MODIFICATION REQUEST

Tyner argues that the trial court erred by finding that Blackhurst's remarriage to a person with significant income was not a substantial change in circumstances justifying modification of spousal maintenance. We agree.

---

[4] Tyner argues that the mandatory pattern form, from which the spousal maintenance provision was copied, misstates the law. As discussed above, the spousal maintenance provision does not contain a misstatement of law or misrepresentation of the statutory presumption. The fact that the dissolution decree used language from the mandatory form is irrelevant. *See Hearst*, 154 Wn.2d at 503 (extrinsic evidence cannot be used to vary, contradict, or modify the written word).

RCW 26.09.170(1) states that the provisions of a dissolution decree respecting maintenance or support may be modified upon a showing of a substantial change of circumstances. Modification is permitted when there are "substantial unanticipated changes in the circumstances of the parties" that were not "within the contemplation of the parties at the time the decree was entered." *Wagner*, 95 Wn.2d at 98, 100. The phrase "change in circumstances" refers to the parties' financial abilities and necessities. *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292, *review denied*, 108 Wn.2d 1027 (1987).

"The determination of whether a substantial change of circumstances justifying modification has occurred is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Fox v. Fox*, 87 Wn. App. 782, 784, 942 P.2d 1084 (1997). Abuse of discretion occurs where the court's decision is manifestly unreasonable or based on untenable grounds. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010). A trial court's failure to exercise discretion is also an abuse of discretion. *Mainline Rock & Ballast, Inc. v. Barnes, Inc.*, 8 Wn. App. 2d 621, 626, 439 P.3d 676, *review denied*, 193 Wn.2d 1033 (2019).

The parties have not cited to any case that has addressed the meaning of "within the contemplation" in the context of spousal maintenance modification. Nor have they provided any law to show whether that contemplation must be objective or subjective. However, in the context of recovering damages from breach of contract, "within the contemplation" of the parties means "foreseeable" or not "reasonably unknown." *See Nevue v. Close*, 123 Wn.2d 253, 258, 867 P.2d 635 (1994); *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 15, 390 P.2d 677, 396 P.2d 879 (1964).

Here, the trial court denied Tyner's request for modification of the award because Tyner "knew or should have known" that Blackhurst's remarriage was a circumstance he "could have

9

contemplated" and "objectively should have [] contemplated" because the dissolution decree expressly addressed Blackhurst's remarriage in the spousal maintenance provision, and Tyner went over drafts of the decree step by step. 2 VRP (Mar. 4, 2020) at 18. Because the dissolution decree explicitly referenced Blackhurst's remarriage, it was foreseeable and not reasonably unknown to Tyner that Blackhurst would remarry. Therefore, Blackhurst's remarriage was "within the contemplation" of the parties. *See Nevue*, 123 Wn.2d at 258; *Larsen*, 65 Wn.2d at 15.

However, a "change in circumstances" justifying spousal maintenance modification refers to the parties' financial abilities and necessities. *Ochsner*, 47 Wn. App. at 524. Here, the original award of spousal maintenance was based on Blackhurst's complete lack of income due to her status as a stay-at-home mother during the course of her marriage to Tyner. But Blackhurst's current spouse's income provides Blackhurst with more financial support than Blackhurst had at the time of dissolution. The record shows that the trial court simply dismissed the possibility that Blackhurst's current spouse's higher income justified modification because it was connected to the possibility of remarriage, which was within the contemplation of the parties. The trial court did not exercise any discretion to consider the amount of Blackhurst's current spouse's income and whether that amount was within the contemplation of the parties.

The trial court abused its discretion by not exercising its discretion in determining whether Blackhurst's current spouse's higher income was a substantial change in circumstances justifying modification of spousal maintenance. Therefore, we reverse the trial court's denial of Tyner's petition to modify spousal maintenance and remand for the trial court to determine whether the amount of Blackhurst's current spouse's income is a substantial change in circumstances justifying modification of spousal maintenance.

No. 54513-6-II

C.    ATTORNEY FEES ON APPEAL

Blackhurst requests attorney fees pursuant to RCW 26.09.140.    Pursuant to RCW 26.09.140 and our review of the parties' financial resources and needs, we exercise our discretion and decline to award appellate attorney fees to Blackhurst.

CONCLUSION

We reverse the trial court's order denying Tyner's petition to modify spousal maintenance and remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Glasgow, C.J.

11