# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DEBRA PUGH, AARON BOWMAN and )
FLOANN BAUTISTA on their own )
behalf and on behalf of all persons )
similarly situated, )

No. 68550-3-I

DIVISION ONE

PUBLISHED OPINION

Respondents, )

v. )

EVERGREEN HOSPITAL MEDICAL )
CENTER a/k/a KING COUNTY PUBLIC )
HOSPITAL DISTRICT NO. 2, )

Appellant, )

WASHINGTON STATE NURSES )
ASSOCIATION, )

FILED: October 28, 2013

Appellant. )

GROSSE, J. — Court approval is not required of a settlement of a lawsuit brought by a union in its associational capacity when it is brought by the union itself, as here, and not as a class naming certain members as representative parties. Accordingly, we reverse.

## FACTS

King County Public Hospital District No. 2 operates Evergreen Hospital Medical Center (Evergreen). Evergreen includes 26 separate, independently-managed medical departments. Each department varies in its procedures for meal and rest breaks for its registered nurses (RNs).

On September 15, 2010, the Washington State Nurses Association (WSNA), the exclusive bargaining unit for RNs at Evergreen, filed a lawsuit against Evergreen seeking to enforce state required rest periods for RNs. The suit was based on

Washington's Industrial Welfare Act,[1] which requires Washington employers to provide at least ten minutes of paid resting time for every four hours of work.[2] Despite this state mandate, many of the hospitals represented by WSNA do not use this break system consistently or at all. As a result, the RNs have become responsible for finding coverage for patient care during the break period rather than the hospital providing the RNs relief from duty. This practice has resulted in RNs needing to take a break, being forced to ask other nurses to double their patient loads, or skip a break to avoid burdening a fellow RN with an unmanageable patient load. In 2010 and earlier, Evergreen did not maintain a hospital-wide system for providing rest periods or recording denied rest periods, nor did it compensate RNs for denied rest periods. WSNA's lawsuit sought unpaid wages to RNs for alleged missed rest breaks and injunctive relief requiring Evergreen to provide rest periods.

On September 17, 2010, a similar suit against Evergreen was filed as a putative class action by two former emergency department RNs, Debra Pugh and Aaron Bowman, seeking unpaid wages for alleged missed rest breaks and missed or interrupted meal breaks. On February 4, 2011, Pugh and others (Pugh) moved to intervene in the WSNA case in an effort to challenge WSNA's standing to sue for damages on their behalf and to protect their interests in obtaining full back pay damages for missed breaks.

On February 10, 2011, WSNA and Evergreen entered into a settlement agreement to settle the RNs' rest break claims for $375,000. As part of the agreement

---

[1] Chapter 49.12 RCW.
[2] Wingert v. Yellow Freight Sys., Inc., 146 Wn.2d 841, 50 P.3d 256 (2002); WAC 296-126-092(4).

WSNA released its right to sue Evergreen in its associational capacity on behalf of its nurse members at the hospital for injunctive relief or damages related to denied rest periods. WSNA then posted on its website and e-mailed to the RNs its announcement of the settlement and also stated that it would hold a meeting about the settlement.

On February 17, 2011, WSNA held a meeting at the hospital and informed the RNs about their options to participate in the settlement or pursue wage claims on their own, including by joining the Pugh lawsuit. Debra Pugh was present at the meeting and distributed information about the class action lawsuit, encouraging the RNs not to participate in the settlement.

On February 18, 2011, WSNA and Evergreen filed a joint motion for court approval of the settlement. The trial court set a hearing date on the motion for March 18, 2011 and set a briefing schedule. The deadline for filing objections to the settlement was set as March 9, 2011. On February 25, 2011, during a scheduling telephone conference with the parties, the trial court (Judge Middaugh) questioned its authority to approve such a settlement.

On March 2, 2011, Pugh deposed Evergreen's representative, Kathleen Groen, and asked her whether, during settlement negotiations, Evergreen had determined a back pay amount owed to the RNs for missed breaks. Groen stated that for settlement purposes, Evergreen came up with one calculation that estimated an amount of $600,000 in back pay, which was based on results in similar lawsuits and assumptions that most nurses did in fact receive their breaks. Groen also confirmed that Evergreen did not have records of missed breaks or the amount of back pay owed.

On March 4, 2011, WSNA and Evergreen filed a joint motion to dismiss WSNA's lawsuit and the court entered a stipulation and agreed order of dismissal of the lawsuit. The motion for joint settlement approval was then stricken as well as Pugh's motion to intervene. Pugh filed an appeal of this dismissal, but ultimately dismissed that appeal.

On March 9, 2011, WSNA mailed letters to the RNs describing the settlement and notifying them that they would be sent a check for their portion of the settlement that they could either accept and release the right to sue Evergreen, or send back and retain the right to pursue their own lawsuit. The checks were mailed to 1,257 RNs along with a letter explaining the purpose of the check and the legal consequences of keeping the check. Counsel for Pugh also sent a letter to the RNs, asserting that his firm could recover more for them and warning that they could not cash the check and be a part of the class action lawsuit for missed rest breaks and had to return the check if they wanted to be a member of the rest break class action.

On August 19, 2011, Pugh amended the complaint to add Floann Bautista, a nurse who settled her rest break claim and executed a release, as a putative member of a subclass consisting of all RNs who settled their individual claims. The amended complaint challenged the validity of the WSNA settlement and the individual releases. Evergreen then tendered defense of the settlements to WSNA, under the indemnity provision of the settlement agreement, and WSNA intervened.

Pugh then asked the court to certify the following class and subclass:

> All registered nurses engaged in patient care who have been employed by Evergreen Hospital Medical Center in King County, Washington and who, at any time between September 17, 2007 and the present, were denied rest and/or meal breaks.
>
> . . . .

All members of the Class who received and cashed a check purporting to waive and resolve their rest break claims with Evergreen.

Pugh also moved for partial summary judgment to invalidate the WSNA settlement agreement and the individual releases and to dismiss WSNA from the lawsuit. Evergreen cross moved for summary judgment, based on evidence that Bautista knowingly released her rest break claims.

The trial court granted Pugh's motion for class certification and motion for partial summary judgment, and denied Evergreen's cross motion for partial summary judgment, concluding that the settlement agreement was invalid because the parties failed to obtain court approval of the settlement and WSNA lacked standing to sue. Both Evergreen and WSNA moved for discretionary review, which was granted by this court. This opinion addresses Evergreen's appeal. We address WSNA's appeal in a separate opinion.[3]

## ANALYSIS

### I. Validity of the Settlement

Evergreen contends that the trial court erred by invalidating the settlement on the basis that the parties did not obtain court approval of the settlement agreement because the case was not a class action requiring such court approval. We agree.

CR 23(e) provides, "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." The trial

---

[3] Pugh v. Evergreen Hospital and Wash. State Nurses Ass'n, No. 68651-8 (Wash. Ct. App. October 28, 2013).

court concluded that court approval of the settlement agreement was required because it was brought on behalf of the member nurses and therefore class action rules applied:

> Because WSNA brought a suit on behalf of the member nurses under a legal theory of associational standing, any settlement that followed would be maintained under class action rules. As Evergreen and WSNA noted in their Joint Motion to Approve Settlement, court approval of a class action is mandated under CR 23(e) to assure that the interests of absent class members are considered and adequately protected. . . .
>
> . . . .
>
> Notwithstanding Evergreen's and [WSNA]'s explanations and arguments to the contrary, court approval of their settlement was not optional and it should have been obtained as mandated under CR 23(e). Pickett v. Holland American Line-Westours, Inc., 145 Wn.2d 178, 187-88[, 35 P.3d 351] (2001).

While Pugh is correct that both WSNA and Evergreen initially jointly sought court approval of the settlement agreement, the record shows that they ultimately concluded that it was not legally required after conferring with the trial court. On February 18, 2011, WSNA and Evergreen sought court approval of settlement, stating in a joint motion:

> While there is no legal requirement that the parties obtain approval of the settlement, the parties have jointly agreed to seek court approval due to the nature of this action. While this action is not a class action, but instead an action based on WSNA's associational standing to pursue back wages on behalf of the nurses it represents, the rules governing settlements of class actions are informative to aid this Court in determining whether this settlement should be approved.

Shortly thereafter, the trial court questioned its authority to approve such a settlement. On March 4, 2011, the court entered a stipulation and agreed order of dismissal of WSNA's lawsuit. The order stated in part:

> Due in part to the Court's comments on February 25, 2011, including with regard to its authority or lack thereof to approve the settlement, the parties

have determined that Court approval of the parties' settlement is not necessary or required.

We agree that the trial court did in fact lack authority to approve the settlement. As Evergreen contends, this was not a class action, but a suit brought by the WSNA in its associational capacity, and therefore court approval of a settlement under CR 23(e) is not required. Indeed, both parties agreed in supplemental briefing to this court that class action rules relating to suits brought by an association do not apply here. CR 23.2 addresses suits brought by an association "as a class by naming certain members as representative parties" and provides that dismissals or compromise of such suits are governed by CR 23(e). As both parties correctly point out, WSNA's suit was not brought as a class and did not name certain members as representative parties. Thus, CR 23(e) does not apply here and court approval of the settlement was not required. The trial court therefore erred by concluding that CR 23(e)'s requirement of court approval of class action settlements applies to any lawsuit brought on a theory of associational standing.

Pickett v. Holland America Line-Westours, Inc.,[4] cited by the trial court, does not require a different result. Unlike here, that case was brought as a class action and was conditionally certified as a class action for purposes of settlement. Thus, court approval of that settlement was required under CR 23(e).[5]

---

[4] 145 Wn.2d 178, 35 P.3d 351 (2001).

[5] There, cruise ship passengers brought a class action against the cruise line and after the trial court denied class certification, the parties reached a settlement agreement. Pickett, 145 Wn.2d at 185. The court then conditionally certified the class for settlement purposes and preliminarily approved the settlement. Pickett, 145 Wn.2d at 185-86. Class members were then notified of the settlement and the court set a hearing to determine the reasonableness of the settlement. At that hearing, a passenger objected

Pugh further contends that even if the WSNA suit was not a class action, Evergreen still had a duty to obtain court approval for the settlement under CR 23(e) because it compromised the claims of the putative class in the class action case. Pugh argues that by failing to obtain court approval, Evergreen denied the RNs due process by providing insufficient notice of the settlement and depriving them an opportunity to be heard. But as Evergreen contends, the settlement did not in fact "compromise" the claims of the putative class members; it resolved only WSNA's claim and simply offered checks to and sought releases from those RNs who chose to settle their individual claims. Thus, none of the putative class members were bound by the settlement or released their individual claims unless they affirmatively chose to do so by accepting the check. The settlement simply bound the WSNA, Evergreen, and those nurses who opted to accept the individual settlement checks.

Moreover, the RNs were not denied due process rights to notice and opportunity to be heard. They were provided ample notice of the settlement terms, including the option not to accept the individual checks and release their claims. They were also well aware of the pending class action suit and that they had the choice to pursue their individual claims by joining that lawsuit. In fact, 19 of the RNs affirmatively refused to accept the settlement checks.

---

to the settlement but the court approved the settlement. On appeal, this court reversed the denial of class certification and the court's approval of the settlement. The cruise line appealed and the Supreme Court reversed, concluding that the Court of Appeals erred by addressing the merits of the class certification ruling and should have instead confined itself to determining the reasonableness of the settlement. Pickett, 145 Wn.2d at 191.

8

Evergreen further contends that the trial court erred by invalidating the settlement agreement on the basis that WSNA lacked standing to sue. As we conclude in our opinion in WSNA's appeal, WSNA did have standing.[6] Accordingly, the trial court's ruling was without basis and therefore error.

## II. Validity of Individual Settlements

Evergreen next challenges the trial court's ruling invalidating the individual settlements. Evergreen contends that the RNs' individual acceptances of the settlement checks and releases of their claims resulted in accord and satisfaction of the dispute between the RNs and Evergreen and are therefore valid. We agree.

The principle of accord and satisfaction recognizes a debtor and creditor's agreement to settle a claim by some performance different than that which is claimed due; once the creditor accepts the substituted performance, it amounts to full satisfaction of the claim.[7] Accord and satisfaction requires a bona fide dispute, an agreement to settle the dispute for a certain sum, and performance of the agreement.[8] Evergreen contends that by signing the checks, the RNs settled their claims against the hospital because the settlement checks included a specific statement of the settlement, Evergreen tendered the checks in final payment, and the RNs endorsed the checks thereby accepting the payment.[9]

---

[6] See Pugh, No. 68651-3-I, slip op. at 5.

[7] Northwest Motors, Ltd. v. James, 118 Wn.2d 294, 303-04, 822 P.2d 280 (1992).

[8] Perez v. Pappas, 98 Wn.2d 835, 843, 659 P.2d 475 (1983).

[9] Evergreen cites Oregon Mut. Ins. Co. v. Barton, 109 Wn. App. 405, 410, 36 P.3d 1065 (2001) (accord and satisfaction occurred when insured deposited settlement check from insurance company given in "full settlement" of claim and check was accompanied by a letter confirming the settlement).

The trial court did not appear to quarrel with this argument, but instead invalidated the individual settlements based on WSNA's lack of standing to sue:

> While Evergreen correctly states the law concerning the defense of accord and satisfaction, the invalidity of the settlement due to WSNA's lack of standing fundamentally undermines their argument. While it is true that each nurse had the option of returning the check, the checks themselves were only made available as a part of Evergreen's agreement with WSNA. Further, WSNA developed the distribution plan concerning the payments to be made to individual nurses. The settlement could not have been possible without WSNA's claiming associational standing, which the court has been [sic] found to be invalid.

As noted above, and as we held in our opinion in WSNA's appeal, the trial court erred by concluding that WSNA lacked standing. Thus, the court's ruling invalidating the individual settlements for lack of standing is without basis and therefore error.

Pugh also contends that the individual releases were invalid because they amounted to an illegal kickback of wages under RCW 49.52.050. Under RCW 49.52.050 it is a crime when an employer who "[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." An agreement between an employer and employee that the employee will accept less than the amount owed under contract or law is void against public policy as an illegal rebate of wages.[10]

The trial court reserved ruling on this argument, concluding that it was an issue of fact for the jury:

> Plaintiffs allege that since WSNA and Evergreen settled for pennies on the dollar of what either Evergreen or WSNA calculated what was owed, the discount amounted to an illegal kickback of wages to Evergreen. Whether

---

[10] McDonald v. Wockner, 44 Wn.2d 261, 267 P.2d 97 (1954).

an employer acts willfully for purposes of RCW 49.52.050, and RCW 49.52.070, is normally a question for the jury. Pope v. University of Wash., 121 Wn.2d 479, 490[, 852 P.2d 1055] (1993). There are generally two instances where an employer's failure to pay wages is not willful: where the employer was careless or erred in failing to pay; or where a "bona fide" dispute exists between the employer and the employee. Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 160[, 961 P.2d 371] (1998). Depending on the evidence at trial, it may well be that willfulness cannot be shown by plaintiffs due to a "bona fide" dispute about the amount of wages owed. This issue must await the full development of the trial evidence and is reserved until then.

Evergreen contends that the evidence established a bona fide dispute over the amount of wages owed for the missed breaks. Evergreen notes that it disputed how many rest breaks were missed, if any, and offered a settlement to each RN based on the total number of hours worked by those RNs.

Evergreen cites a Fifth Circuit case, Martin v. Spring Break '83 Productions, LLC, where a release was held to be enforceable in a wage dispute case even though the employee accepted less than the amount claimed.[11] There, the union sued an employer under the Fair Labor Standards Act of 1938 (FLSA)[12] alleging that employee union members were not paid for all work performed. After determining that it would not be possible to determine whether the union members actually worked on the days claimed, the union settled with the employer and the union member employees received and cashed settlement checks and released their FLSA claims. The employees later sued for unpaid wages, arguing that they could not privately settle wage claims under the FLSA. The court disagreed, concluding that "payment offered to and accepted by [the employees] . . . is an enforceable resolution of those FLSA claims predicated on a

---

[11] 688 F.3d 247 (5th Cir. 2012).
[12] 29 U.S.C. §§ 201-219.

bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves."[13] Similarly here, as Evergreen contends, there may be difficulty in determining whether and when breaks were missed. Thus, the individual RNs were best situated to determine whether the settlement was a fair compromise of a bona fide dispute over the hours worked during missed rest breaks.

Pugh further contends for the first time on appeal that the individual releases were invalid because they were obtained by overreaching, fraud, and misrepresentation. A party seeking to avoid a release based on overreaching, fraud, or misrepresentation must produce clear and convincing evidence.[14] Here, the trial court did not make any such finding as it was not presented with the issue. Thus, we decline to review the issue as not properly preserved for appeal. In any event, we note that at most, the record contains disputed evidence, leaving the issue a question of fact for resolution by the jury.[15]

The trial court's rulings that the settlement agreement and individual settlements are invalid are without basis. Thus, the trial court erred by granting summary judgment for Pugh. Accordingly, we reverse and remand for the trial court to reinstate the

---

[13] Martin, 688 F.3d at 255.

[14] Cortez v. Spokane Int'l Ry. Co., 112 Wash. 289, 294, 191 P. 820 (1920) (quoting Nath v. Oregon R. & Nav. Co., 72 Wash. 664, 131 P. 251 (1913)).

[15] Evergreen points to Bautista's testimony that that there was nothing inaccurate or misleading in the letter that accompanied the settlement check, that she understood she was settling even though it was less than what she wanted, that she knew she had access to more information about the settlement but declined to seek it because she believed it was pointless, and that she had the contact information for plaintiff's counsel in the class action but chose not to pursue it at the time. Pugh points to her testimony that she did not know that Evergreen admitted it owed nurses almost twice the amount of the settlement.

settlement agreement between WSNA and Evergreen and the individual settlements by RNs who chose to accept the settlement checks.

III.  Class Certification

Evergreen next challenges the order granting class certification, contending that Pugh failed to establish commonality of claims and the class representatives did not adequately represent the class.  This court reviews an order of class certification for an abuse of discretion.[16]  Under CR 23(a), to obtain class certification the plaintiff must show numerosity, commonality, typicality, and adequacy of representation.  A trial court must conduct a "rigorous analysis" to ensure that these requirements are satisfied.[17]

Given our reversal of the trial court's ruling on summary judgment and reinstatement of the settlement of the WSNA lawsuit, it is unclear what remains of Pugh's lawsuit.  Thus, determining whether the class certification requirements of numerosity, commonality, typicality, and adequacy of representation have been satisfied would be speculative, if not difficult to determine at all, at this point.  Accordingly, we remand to the trial court to reevaluate its class certification ruling in light of our order that the WSNA settlement agreement is valid and binding.

We reverse and remand.

WE CONCUR:

---

[16] Nelson v. Appleway Chevrolet, Inc., 160 Wn.2d 173, 188, 157 P.3d 847 (2007).
[17] Anfinson v. FedEx Ground, 159 Wn. App. 35, 67, 244 P.3d 32 (2010).