FILED
COURT OF APPEALS
DIVISION II

2015 MAR 24 AM 8:34

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AMERICAN EXPRESS CENTURION BANK, | No. 45463-7-II |
| Respondent, | Consolidated with |
| v. | No. 45466-1-II |
| HEINZ HENGSTLER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — In this consolidated appeal, Heinz Hengstler appeals two superior court orders, each granting summary judgment in favor of American Express Centurion Bank in a separate credit card collection action. Hengstler argues that the superior court erroneously granted summary judgment because (1) evidence supporting the motion, namely Richard Kier's affidavits and account records, were inadmissible; (2) issues of material fact existed; (3) American Express did not validate the debt as required by the Fair Debt Collection Practices Act;[1] and (4) it held Hengstler to the same standards as an attorney. Because the admissible evidence presented by American Express did not sufficiently demonstrate the existence of contracts with Hengstler concerning the credit card accounts on which the debt accumulated, we reverse both summary judgment orders and remand for further proceedings.

---

[1] 15 U.S.C. § 1692.

FACTS

Heinz Hengstler appeals two superior court orders, each granting summary judgment in favor of American Express Centurion Bank in separate credit card collection actions; one for the credit card account ending in 01003 and one for the credit card account ending in 71006. Although the superior court granted summary judgment on both actions in a single hearing, each action had its own complaint, summary judgment motion, summary judgment order, and appeal. We consolidated the two appeals.

A.    *American Express's Suits and Hengstler's Responsive Motions*

In both cases, American Express filed complaints in superior court against Hengstler for unpaid debt on credit card accounts. American Express's counsel signed the complaints as "Attorney for Plaintiff," but American Express itself did not verify the complaints.[2] Clerk's Papers (CP) at 2, 316. Hengstler moved to dismiss American Express's complaints and for summary judgment, arguing that he was "not in receipt of any document which verifies that American Express . . . authorized this action or is even aware of it." CP at 4, 318. The superior court denied Hengstler's motions.

In both cases, American Express moved for summary judgment, supporting its nearly identical motions with a declaration of American Express's attorney[3] and two specific exhibits: Exhibit 1, Kier's affidavit with identified account records, and Exhibit 2, additional unidentified account records from the related account.

---

[2] CR 11.

[3] The declaration of American Express's attorney concerned only American Express's request for attorney fees.

In each case, two attachments accompanied Kier's affidavits: Attachment A, which consisted of "[a] true and correct copy of the Cardmember Agreement in effect at the time of cancellation of [Hengstler's] Account";[4] and Attachment B, which consisted of "[t]rue and correct copies of the monthly Account Statements for [Hengstler's] Account for the period ending May . . . 2012." CP at 484, 634-35.

Kier's affidavit stated he was an "Assistant Custodian of Records for American Express Centurion Bank," had personal knowledge of American Express's regular practices and procedures regarding their credit card billing procedures, business practices, and recordkeeping, and had access to and was generally familiar with American Express's account records. CP at 482, 632. Kier's affidavit also stated he had personally reviewed Hengstler's account records, and had based the statements in his affidavit on either his review of American Express's records or his personal knowledge. He further averred that he could competently testify to every fact within his affidavit. Kier's affidavit stated that all of American Express's monthly account statements were generated by computerized processes and that "[t]he billing statements and other documents referred to herein were created at or near either the time of the transactions or the time the original statements were made and have been kept by American Express in the ordinary course of business." CP at 483; 633. The two Exhibit 2s to the motions for summary judgment, which were not attached to Kier's affidavits and not identified by Kier, appeared to be monthly account statements for Hengstler's related accounts from early 2011 through April of 2012.

---

[4] The "cardmember" agreement was unsigned, but stated: "When you use the Account (or you sign or keep the card), you agree to the terms of the Agreement." CP at 490, 640.

To summarize, two exhibits supported each summary judgment motion: Exhibit 1 consisted of Kier's affidavit and its two attachments, and Exhibit 2 consisted of unidentified copies of several monthly statements purportedly from Hengstler's related account.

B.     *Specifics of the Debts Incurred on Each Account*

Kier's affidavit supporting American Express's summary judgment motion in the case of the account ending in 01003 stated that based on Kier's review of American Express's records, Hengstler had opened that account in 1993 and used it to make purchases. The one monthly account identified by Kier (Attachment B) covered only the one-month period ending May 20, 2012, the most recent period in the record. This statement was addressed to Hengstler's post office box, and showed a balance of $6,180.66.

Kier's affidavit supporting American Express's summary judgment motion in the case of the account ending in 71006 stated that based on Kier's review of American Express's records, Hengstler had opened that account in 1996 and used it to make purchases. The one monthly account statement identified by Kier (Attachment B) covered only the one-month period ending May 9, 2012, the most recent period in the record. That statement was addressed to Hengstler's post office box and showed a balance of $25,411.39.

Neither statement attached to Kier's affidavits (Attachment B) showed any of the charges that caused the debts to accrue. No exhibit attached to Kier's affidavits provided any evidence showing that Hengstler personally acknowledged either account, such as cancelled checks or online payment documentation. And although Kier's affidavits mention monthly billing statements, they did not identify or reference either Exhibit 2 of American Express's summary judgment motions.

C.    *Hengstler's Response to the Summary Judgment Motions, the Superior Court's Grant of American Express's Summary Judgment Motions, and Appeals*

In each case, Hengstler filed a response in the form of "objections" to American Express's summary judgment motion, asserting numerous claims. CP at 300, 613. Hengstler did not file affidavits or otherwise submit evidence in either case.

The superior court resolved American Express's summary judgment motions in both cases in a single hearing. The superior court ruled that both Exhibit 1s and both Exhibit 2s were admissible under the business records exception to the hearsay rule. Based on these records, the superior court entered an order granting American Express's summary judgment motions. In the case of the account ending in 01003, the order awarded American Express a total judgment in the amount of $6,420.66. In the case of the account ending in 71006, the superior court awarded American Express a total judgment in the amount of $25,720.89. Hengstler appealed both orders, and we consolidated his appeals.

ANALYSIS

I. KIER'S AFFIDAVITS AND THE ACCOUNT RECORDS

Hengstler argues that the superior court erred by considering both Exhibit 1s and both Exhibit 2s. We hold that the superior court properly considered both Exhibit 1s but erred by considering both Exhibit 2s.

No. 45463-7-II ; Consolidated wi No. 45466-1-II

> CR 56(e) states in part:
>
> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts *as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

(Emphasis added.) We review de novo the superior court's evidentiary decisions on summary judgment. *Farrow v. Alfa Laval, Inc.*, 179 Wn. App. 652, 660, 319 P.3d 861, *review denied*, *Farrow v. Flowserve US, Inc.*, 181 Wn.2d 1003 (2014).

A.  *Right To Cross-Examine Kier*

As an initial matter, Hengstler argues that the superior court erred by relying on both Exhibit 1s because Hengstler did not receive the opportunity to cross-examine Kier at the summary judgment hearing. We disagree.

CR 56(c) allows the superior court to grant summary judgment without hearing testimony, based on only "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Only after summary judgment "should the matter proceed to trial and allow [a party] 'to disprove such facts by cross-examination and by the demeanor of the moving party while testifying.'" *Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 676, 292 P.3d 128 (2012) (quoting *Mich. Nat'l Bank v. Olson*, 44 Wn. App. 898, 905, 723 P.2d 438 (1986)). Thus, the superior court did not err by relying on Kier's affidavits without providing Hengstler an opportunity to cross-examine Kier.

B.  *Business Records Exception: Account Records*

Hengstler argues that the superior court erred by ruling that the attachments to Kier's affidavits and the Exhibit 2s were admissible under the business records exception to the hearsay

6

rule. We hold that Kier's affidavits established the admissibility of Attachments A and B, but did not establish the admissibility of the Exhibit 2s.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless it comes within an exception established by statute or common law. ER 802; *State v. Kirkpatrick*, 160 Wn.2d 873, 881, 161 P.3d 990 (2007).

Business records of regularly conducted activity are an exception to the hearsay rule. *State v. Iverson*, 126 Wn. App. 329, 337, 108 P.3d 799 (2005). RCW 5.45.020 governs admission of business records in Washington State. 126 Wn. App. at 337. RCW 5.45.020 states:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Thus, on summary judgment, the custodian of the records or other qualified witness must aver to (1) the record's identity, (2) its mode of preparation, (3) if it was made in the regular course of business, and (4) if it was made at or near the time of the act, condition, or event. RCW 5.45.020; *Discover Bank v. Bridges*, 154 Wn. App. 722, 726, 226 P.3d 191 (2010). If the affidavit touches upon each of these elements in regards to a record, that record is generally admissible. *See* 154 Wn. App. at 726.

Kier, as the assistant custodian of records for American Express, was a qualified witness under the statute. Additionally, Kier's affidavit in each case stated that (1) Attachment A to his affidavit was a true and correct copy of the "cardmember" agreement and Attachment B was a true and correct copy of monthly statements, (2) the monthly account statements were made by a

computerized process, (3) Hengstler's account records were made in the regular course of business, and (4) they were made at or near the time of the act, condition, or event. Thus, because Kier's affidavits established the foundation for admissibility of Attachments A and B, the superior court properly ruled Attachments A and B admissible under the business records exception to the hearsay rule.

Kier's affidavits did not reference or identify either Exhibit 2, did not aver to the identity of either Exhibit 2, or establish any of the other required foundational elements regarding these exhibits. Thus, the superior court erred by considering them when determining whether summary judgment was proper.[5]

## II. GENUINE ISSUES OF MATERIAL FACT

Hengstler argues that American Express was not entitled to summary judgment because it could not show an absence of genuine issues of material fact. We agree because the Exhibit 1s alone were insufficient to demonstrate the existence of a contract between Hengstler and American Express concerning the credit card accounts at issue.

We review summary judgment orders de novo. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate if, when viewing the facts in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Ranger Ins. Co.*,

---

[5] Hengstler argues American Express Centurion Bank never employed Kier. It appears Hengstler is referring to Kier's declaration supporting American Express's *initial, withdrawn* summary judgment motions, in which Kier stated that he was the "Assistant Custodian of Records for American Express Travel Related Services Company, Inc. . . . [which] is the parent of American Express Centurion Bank." CP at 15. But in Kier's affidavits attached to the summary judgment motions at issue here, Kier stated that he was the Assistant Custodian of Records for American Express. Thus, Hengstler's argument fails.

164 Wn.2d at 552. A genuine issue of material fact exists when reasonable minds could reach different conclusions. *Michael v. Mosquera–Lacy*, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

In a summary judgment motion, the moving party initially bears the burden of submitting adequate affidavits showing that it is entitled to judgment as a matter of law. 165 Wn.2d at 601; *Ranger Ins. Co.*, 164 Wn.2d at 552. If the moving party does not sustain its burden, the superior court should deny summary judgment "regardless of whether the nonmoving party has submitted affidavits or other evidence in opposition to the motion." *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988).

To be entitled to summary judgment on its claims that Hengstler is responsible for debt on credit card accounts, American Express was required to demonstrate the existence of a contract with Hengstler concerning the credit card accounts on which the debt accumulated. *Bridges*, 154 Wn. App. at 728. A valid contract requires an objective manifestation of mutual assent to its terms, which generally takes the form of offer and acceptance. *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993). The offeror is the master of the offer and may propose acceptance by conduct. *Discover Bank v. Ray*, 139 Wn. App. 723, 727, 162 P.3d 1131 (2007).

Here, American Express's unsigned cardmember agreements in the identified account records provided that the use of the credit card constituted acceptance of its terms:

> When you use the Account (or you sign or keep the card), you agree to the terms of the [Credit Card] Agreement.

CP at 490, 640.

Because the cardmember agreements were unsigned, they did not, by themselves, prove the existence of a contract. But even in the absence of a signed agreement, establishment of a defendant's personal acknowledgement of a credit card account is prima facie proof of assent to the terms of usage offered by the bank. *See Bridges*, 154 Wn. App. at 727. Thus, the question before us is whether the identified account records, the only account records the superior court could consider, provided sufficient evidence to demonstrate Hengstler personally acknowledged the debt on the credit card accounts. Our analysis is guided by three cases.

In *Ray*, the bank supported its motion for summary judgment with four years' worth of self-generated monthly account statements, a copy of an apparently unsigned cardmember agreement, and several cancelled checks that the defendant had sent as payment on the debt. 139 Wn. App. at 725. In affirming summary judgment, Division Three of this court held this evidence sufficient to establish that the defendant used his credit card and thereby assented to the cardmember agreement's terms. 139 Wn. App. at 727.

But in *Bridges*, we reversed the superior court's grant of summary judgment in the bank's favor. 154 Wn. App. at 728. In *Bridges*, as in *Ray*, the bank provided copies of self-generated monthly account statements for a period of two years and an unsigned cardmember agreement. *Bridges*, 154 Wn. App. at 724, 727. But the statements provided only a summary of the account balance and payments made, which did not constitute "detailed, itemized proof of . . . card usage" by the defendants. 154 Wn. App. at 727. Furthermore, unlike in *Ray*, the bank did not provide any evidence that the defendants "acknowledged the debt, for example, through evidence of cancelled checks or online payment documentation." *Bridges*, 154 Wn. App. at 727. Because the bank did not produce any "evidence of the [defendant's] personal acknowledgment of the

account" similar to the cancelled checks in *Ray*, the evidence was insufficient to establish assent. *Bridges*, 154 Wn. App. at 728.

In *Citibank South Dakota, NA v. Ryan*, 160 Wn. App. 286, 247 P.3d 778 (2011), we reversed a summary judgment order in favor of Citibank based on similar facts as in *Bridges*. The bank submitted copies of 13 months' worth of account statements and an unsigned cardmember agreement. 160 Wn. App. at 288. The monthly account statements indicated that payments to the account were made but did not show "how the payments were supposedly made" and did not "cover the period in which the card was first issued or the majority of the debt was accumulated." 160 Wn. App. at 288. Based on *Bridges*, we held that "the bare notation of supposed payments on the [monthly] account statements Citibank provided" was not sufficient to prove that the *defendant* made the payments. *Ryan*, 160 Wn. App. at 293. We also rejected the bank's claim that it had established use of the card:

> None of the notations on the statements offered by Citibank here actually explained what the supposed purchase was or who it was from. Nor is it clear whether these were individual "purchases" or were only total amounts for the period covered by the statement. Moreover, these supposed purchases did not add up to anything near the total Citibank claimed was owed on the card. And the account statements did not otherwise provide a basis to match the listed amounts with any particular charge slip or purchase. The materials Citibank provided thus did not constitute the detailed and itemized documentation required by *Bridges*.[6]

---

[6] American Express cites *Stratman* in support of its position. In *Stratman*, Division One of this court affirmed summary judgment in the bank's favor, holding that monthly account statements, standing alone, were sufficiently detailed and itemized to prove that the claimed debt arose from card usage. 172 Wn. App. at 674. But the defendant in *Stratman* did not raise the issue of the bank's proof that she personally acknowledged the debt. *See* 172 Wn. App. at 674. Thus, we do not read *Stratman* as excusing the bank from presenting, in the absence of a signed cardmember agreement, some other evidence showing that the defendant personally used the card or other such evidence of personal acknowledgement.

*Ryan*, 160 Wn. App. at 293.

Here, Kier's affidavits identified the unsigned credit card agreement and one monthly account statement addressed to Hengstler's post office box. These records showed no specific charges for any items, did not reveal how the debt was accumulated, and did not include any cancelled checks or online payment documentation showing that Hengstler himself acknowledged the debt on the credit card accounts. Because these records did not reveal how the debt was accumulated and did not contain any other evidence of Hengstler's personal acknowledgment of the debt, American Express did not provide sufficient evidence to demonstrate the existence of a contract with Hengstler concerning the credit card accounts on which the debt accumulated.[7] Therefore, we hold the superior court erred by granting summary judgment in American Express's favor. Because we resolved this issue in favor of Hengstler, we need not consider Hengstler's remaining arguments. But because the issues are likely to recur on remand, we consider and reject Hengstler's arguments that American Express failed to validate Hengstler's debt and that pro se pleadings are to be construed liberally.

---

[7] In addition to arguing that sufficient proof of assent exists, American Express relies on the "account stated" doctrine to demonstrate the existence of a contract with Hengstler. Br. of Resp't at 15. An "'account stated'" is "'a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.'" *Nw. Motors, Ltd. v. James*, 118 Wn.2d 294, 304, 822 P.2d 280 (1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 282 (1981)). But an account stated determines the *amount* of a debt, where some preexisting liability existed. It does not in and of itself create a primary obligation. 118 Wn.2d at 302; *Assoc. Petroleum Prods., Inc. v. Nw. Cascade, Inc.*, 149 Wn. App. 429, 437, 203 P.3d 1077 (2009). Because American Express did not provide sufficient evidence to demonstrate the existence of a contract with Hengstler concerning the credit card accounts on which the debt accumulated, it did not provide sufficient evidence to establish a primary obligation. Thus, we do not consider whether the debts' specific amounts were established under the account stated doctrine.

### III. VALIDATION OF DEBT UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

Hengstler argues that summary judgment was improper because American Express failed to validate Hengstler's debt pursuant to 15 U.S.C. § 1692, the Fair Debt Collection Practices Act. We disagree.

15 U.S.C. § 1692 applies only to debt collectors, which are entities who regularly collect debts for others, not creditors who are collecting debts on their own behalf. *Ray*, 139 Wn. App. at 727. Here, American Express is a creditor attempting to collect debts on its own behalf, not a debt collector collecting debts for another. Thus, because American Express is not a debt collector subject to the Fair Debt Collection Practices Act, Hengstler's claim fails.

### IV. PRO SE PLEADING

Hengstler argues that the superior court erred by holding him to the same standards as an attorney, when federal law requires that pro se pleadings are to be construed liberally. We disagree.

In federal court, pro se pleadings receive liberal construction. *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012); *see Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594 30 L. Ed. 2d 652 (1972). But in Washington courts, a superior court "must hold pro se parties to the same standards to which it holds attorneys." *Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010). This is a procedural rule. Federal procedural rules do not control in state courts. *Adams v. LeMaster*, 223 F.3d 1177, 1182 n.4 (10th Cir. 2000). Thus, the Washington rule applies and the superior court held Hengstler to the proper standard.[8]

---

[8] We note that even if the superior court could have properly considered the Exhibit 2s, summary judgment would still have been inappropriate. The Exhibit 2s contained monthly account statements showing small, specific charges for certain items, including the date and amount of

We reverse both summary judgment orders and remand for further proceedings.[9]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Melnick, J.

_____
Sutton, J.

---

individual purchases made and the name of the entity from which the goods or services were purchased. But they did not show charges made prior to 2011, despite the account in each case being opened in the mid-1990's, and did not reveal how the vast majority of debt on the credit card accounts was accumulated. They did not show charges that, from the record, could be attributed only to Hengstler sufficient to show that he personally acknowledged and assented to the terms of the credit card agreement. Furthermore, they did not include any cancelled checks or online payment documentation showing Hengstler himself acknowledged the debt.

[9] Without explanation, Hengstler argues the superior court lacked subject matter jurisdiction due to the superior court's misapplication of the rules of civil procedure, alleged ultra vires actions of American Express, Kier's failure to testify at the summary judgment hearing, and the failure of American Express's attorney to prove that American Express authorized the suit. Because Hengstler failed to cite any authority supporting these subject matter jurisdiction arguments, we do not consider them. *Pappas v. State Employment Sec. Dep't*, 135 Wn. App. 852, 858, 146 P.3d 1208 (2006).